# International Cement Company v. Morris Beifeld.

1. BUILDING CONTRACTS—*Effect of Abandonment and Voluntary Assignment by Sub-contractor.*—Where a sub-contractor abandons his work and makes a voluntary assignment and thereafter neither he nor his assignee makes any attempt to execute the same, the original contractor may take charge of the work and complete it and may recover for damages sustained, without first procuring certificates from the architect as to the propriety of such a course or the amount of his dam-

International Cement.Co. v. Beifeld.

ages under the contract, although such certificates are required by the contract.

**Voluntary Assignment.**—Error to the County Court of Cook County; the Hon. Charles H. Donnelly, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed October 22, 1896.

*That part of the contract over which the controversy in this case arose, which is considered by the court, is as follows:*

12th. Should the party of the first part at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architect, the party of the second part shall be at liberty, after three days' written notice to the party of the first part, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the party of the first part under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the party of the second part shall also be at liberty to terminate the employment of the party of the first part for the said work, and to enter upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the party of the first part, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the party of the second part in finishing the work, such excess shall be paid by the party of the second part to the party of the first part; but if such expense shall exceed such unpaid balance the party of the first part shall pay the difference to the party of the second part. The expense incurred by the party of the second part, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties.

David S. Geer, attorney for plaintiff in error.

Moses, Pam & Kennedy, attorneys for defendant in error.

Mr. Justice Waterman delivered the opinion of the Court.

The writ in this case was sued out to reverse the action

of the County Court in allowing a claim against the insolvent estate of one Clyde D. Armstrong, who made a voluntary assignment September 10, 1894.

On July 30, 1894, defendant in error made a contract with Felix & Marston for the construction of a warehouse, he taking the entire contract. On the 6th of August of the same year, defendant in error sub-let the mason work to the insolvent, Clyde D. Armstrong. Among the provisions in the contract is the limitation of the time within which, as well as the manner, the work was to be done. Section 12 provides for an involuntary termination of the contract by defendant in error under certain conditions there stated.

The insolvent proceeded with the work under this contract, and had been working thereon for a short period, when complaints were received by defendant in error, from the owners, regarding the delay in the work. The complaints continued until the architect served notice, under Section 12 of the contract, on defendant in error.

On the 6th of September, after the defendant in error received a notice from the architect, attempt was made to serve a notice to proceed with the work, upon the insolvent, but the insolvent had left the work, and the notice was served September 7th upon his foreman, who gave it to the wife of the insolvent. The insolvent, Armstrong, left the job on the 5th, and was reported to be absent from Chicago. He was searched for by defendant in error, day after day, and not found until after the 10th of September, and after he had made an assignment.

Defendant in error then took charge of the work and completed it; filing in the County Court his claim for over $5,000, the amount which he says he expended over and above the price he was to pay Armstroing. Plaintiff in error, a creditor of the insolvent, objected to the allowance of the claim; the County Court having heard the evidence adduced by the claimant and plaintiff in error, allowed the claim for $3,272.94, that being the verdict of the jury to which the cause was submitted. Plaintiff in error, as such creditor and executor, prosecutes this writ of error.

It was made to fairly appear that the insolvent had, prior to the making of his assignment, so neglected to prosecute the work he had undertaken, if he had not abandoned it, that the defendant in error had reasonable ground for believing that it was necessary that he take possession of and complete the work; after the assignment, neither the insolvent nor his assignee exhibited any disposition to again assume to carry out the contract. The question as to whether defendant in error was justified in taking possession of and completing the work and charging the estate of Armstrong with what the completion of his contract cost in excess of the agreed price, and if so, what such excess amounted to, was submitted to the jury under instructions in which we find no sufficient warrant for reversing the judgment of the County Court.

· We do not think, Armstrong having abandoned his contract and made a voluntary assignment in insolvency, that before the defendant in error can recover damages for the default he must procure the certificate of the architect as to the amount of such damage.

Armstrong made no attempt, after his assignment, to carry out his contract; he left it with little more than half of it done; neither he nor his assignee has applied to the architect to certify as to the amount of the damage suffered, or offered to abide by the award of the architect in this regard, should one be made. There is now invoked a provision of the contract, which, until the trial in the County Court, Armstrong and his assignee disregarded, and not even then expressed a willingness to abide by.

It was not necessary that defendant in error should apply to the County Court before taking possession of the work. The assignee evidently did not desire to carry it on at the expense of the estate; indeed, it would have been folly for him to have undertaken to do so.

We find no error requiring a reversal of the order of the County Court, and it is affirmed.